Sutliri1, J.
Dower is said to be one of the three things favored in law; and it is certain that at common law the widow could not be barred of her dower by any assignment or assurances to her of other lands or rents issuing out of other lands than those of which she was dowable (except in the case of dower ad ostium eeelesioe, or ex assensu patrie), whether the assignment or assurance was made by the husband before or after the marriage. This arose probably from the consideration that, at common law, no right can be barred until it accrues, and that a right or title to an estate of freehold can not, at common law, be barred by a collateral satisfaction.
By the common law, in England, the wife was only endowed of the third part of such lands' and tenements as the husband was seized of, at the time of the marriage, unless at the time *410 of the marriage he specially promised, before the priest, to endow her of his future acquisitions. But if the husband, at the time of the marriage, had no lands, an endowment, at. the time of the espousal, in goods, chatties or money, by him was a bar to any claim of dower on her part to lands which he might afterward acquire. The endowment so made by the husband, in goods, chattels or money, seems to have 'been regarded, in the absence of lands on his part, as accepted by her in the stead of her dos rationabilis, or third part of lands by him at the time held. Therefore the common law rule applied, the same as if she had been actually endowed of lands, at the time of the marriage; and she could not in the absence of a special engagement so made by the husband to endow her of his after acquired lands, claim dower therein. And although Glanvil, and other old writers, speak of such an endowment in goods, chattels or money, before or at the time of marriage, as being a bar of any dower in after acquired lands, it would be certainly more correct to say, no'right of dower in the after acquired lands, in such a case, ever existed at common law. Indeed, to allow such an endowment in goods or money to be pleaded in bar of a common law right of dower afterward accruing to the woman, when claimed by her, would certainly be in contravention of the common law maxims mentioned. For if the right to be endowed of future acquired lands could arise at common law, such right did not exist at the time of so being endowered of personal property; and such endowment of goods, etc., if pleaded as a satisfaction of such after accruing dower estate in the lands, would be only a collateral satisfaction. And hence, while dower was only claimed and assigned at law under writs of dower in England, the widow could only be barred of her right of dower by elopement, divorce, treason of the husband, and, perhaps, by husband and wife levying a fine, or suffering a common recovery; or, by detaining the title deeds or evidences of the estate from the heir, until she restore them.
A jointure, which is defined by Sir Edward Coke to be “ a competent livelihood of freehold for the wife, of lands and tenements, to take effect, in profit or possession, presently *411 after .the death of the husband, for the life of the wife at least,” was not at common law a legal bar to the widow’s claim of dower; but only became a bar by force of the statute of uses (27 Hen. VIII., ch. 10, sec. 6), providing, among other things, that where lands had been settled to the use of the wife, etc., for her jointure, “ that then, in every such case, every woman married, having such jointure made or hereafter to be made, shall not claim nor have title to have any dower of the residue of the lands, tenements or hereditaments, that at any time were her said husband’s, by whom she hath any such jointure; nor shall demand nor claim her dower.of and.,against them that have the lands and inheritances of her said husband; but if she have no such jointure, then she shall be admitted and enabled to pursue, have and demand her dower by writ of dower after the due course and order of the common law of this realm; this act or any law or provision made to the contrary thereof notwithstanding.” This. statute, being in derogation of the common law, had to be strictly construed; and under it no plea in bar was admitted not allowable at common law, which did not fall clearly within the statute.
No antenuptial agreement, then, not falling within the statute, however beneficial and valuable to the wife, could, by force of this statute, .in England, constitute a bar to the widow’s demand of dower at law by writ of dower. It was only at a much later date than this statute (27 Hen. VIII., ch. 10), that courts of equity, in analogy, as is said, to this statutory defense at law, allowed equitable jointures, and beneficial antenuptial contracts to be set up as a defense to proceedings by petition in chancery, by the widow, for her dower. But the earliest reports of cases adjudged in the court of chancery, are in the reign of Charles the First; being after the enacting of this statute. And it is not probable that proceedings were entertained for dower, in that court, until a somewhat later date.
In the case of Daniler v. Daniler, a proceeding in chancery on petition for dower in 1716, the lord chancellor allowed an antenuptial agreement and an eauitable jointure to be *412 shown by the heir, the defendant, as a defense to the claim set forth in the petition. 1 Vern. 724.
And as late as the case of Mundy v. Mundy in (1798), 2 Ves., sen. 122, the lord chancellor, in overruling a demurrer for that the proceeding for dower was in equity instead of at law, said, “ If a legal title such as dower is controverted, it must be made out at law, but this court will act in aid of the title,” etc. ■ And the court remarked that the proceeding was so general in equity as to almost put an end to writs of dower. And from the time applications for dower were made in England by petition in equity, these equitable defenses have there been entertained.
Now let us turn to the consideration of the same subject in this state ; and we shall find that there is a striking analogy between the subject of dower, the law and practice in this state, and that of England.
The first statute in this state, the territorial act of July 14, 1795, provided as follows :
“ Sec. 1, When the heir or other person having the next immediate estate of freehold or inheritance, shall not within one month after demand made, assign and set over to the widow her dower or just third part of all lands, tenements and hereditaments whereof, by law, she is or may be dowable to her satisfaction, according to the true intendment of law, then such widow may sue for and recover the same by writ of dower to be brought against the tenant in possession, or such persons as have, or claim right of inheritance in the same estate, in manner and form as the law prescribes.”
“ Sec. 2. Upon rendering judgment for any woman to recover her dower in any lands, tenements' or hereditaments, reasonable damage shall also be awarded to her from the time of the demand and refusal to assign to her reasonable dower. And a writ of seizin shall be directed to the sheriff or coroner,” etc.
Section 3, of the act provided that where the estate could not be aparted, the widow’s dower might be assigned in the rents and profits; and also that she should not commit waste, *413 on penalty of forfeiture of that part whereon the waste was made. 1 Chase, 187.
Under this act, the common law remedy of writ of dower is the only proceeding allowed the widow; and under this common law proceeding, for reasons already mentioned and to be more particularly shown, no antenuptial agreement, nor even a jointure could be pleaded in bar of the widow’s right of dower asserted under her writ of dower.
This territorial act was succeeded by the act of January 19, 1804, which contained the following additional provision:
“ Sec. 2. That if any estate shall be conveyed to a woman for a jointure instead of her dower, to take effect immediately after the death of her husband, and to continue during her life, such conveyance shall bar her right of dower to the lands and tenements which were her husband’s ; but if the jointure or conveyance was made when the feme was in infancy, or if made after marriage, in either case the widow, at her election may waive her jointure and demand her dower.”
This act of 1804, and the territorial act of 1795, which had remained unrepealed, were superseded by the dower act of February 12, 1805.
The first section of this act of 1805, like that of the two preceding acts, gave the widow for her dower, one equal third part of all the lands of which her husband was seized, “ as an estate of inheritance during coverture, and to which she had not relinquished her right of dower, by deed duly executed,” etc.
Section 2, was a mere transcript of section 2 of the act of 1804, in relation to jointure estates conveyed to the widow; and with this additional provision on that subject. “ Sec. 5. That when any conveyance, intended to be in lieu of dower, shall, through any defect, fail to be a legal bar thereto, and the widow, availing herself of such 'defect, may demand her dower, the estate and interest conveyed to such widow, with intention to bar her dower shall thereupon cease and determine.”
Under this act of 1805, it is to be observed, the law was continued, as it had always been, that the widow’s dower consisted in her life estate to one third part the lands, tenements *414 and hereditaments of which her husband was seized, at any time during coverture as an estate of inheritance, and to which she had not, under the statute, released her right of dower; and the common law action, the writ of dower, was by this act continued to the widow as the means of asserting her right, and obtaining possession thereof. By the law of 1804, the provision that, an estate conveyed to the woman as jointure, according to the provision of that statute, should bar her right of dower, was continued by the act of 1805 ; and also the provision added thereto, that, if any conveyance made to the woman and intended to be in lieu of dower, shall through any defect fail to be a legal bar, and the widow shall demand her dower, that the estate so conveyed shall thereupon cease and determine.
Now, inasmuch as it is a rule that statutes “ are not presumed to make any alteration in the common law, farther or otherwise than the act does expressly declare ” (Broome, 28), under this act of 1805, no bar could be pleaded to the writ of dower, the common law action, except matter constituting a bar at common law, or matter constituting a bar by the express language of the statute. But an antenuptial agreement not admitted at common law, and not being an estate conveyed to the woman as a jointure in lieu of her dower, to take effect Immediately on the death of her husband, and to continue during her life, would not be, by the express provision of the statute, a bar to the right of dower. Such antenuptial agreement, therefore, however evidently .intended to be in lieu of dower, not being a bar at common law, and not falling within the express provision of the statute, could not.be pleaded in bar. It would fail to be a legal bar, through the defect, or want of correspondence to the express provision of the statutory law; and the same would, therefore, upon the widow’s demanding and receiving her dower, by force of fjaid section 5, of the act of 1805, cease and determine.
Such continued to be the law of dower, and jointures, and antenuptial agreements, as regulated by statute law, in this state, until the law was again revised and somewhat changed by the act of January 26, 1824. It is provided by that act:
*415 “ Sec. 1. That the widow of any person dying, shall be-endowed of one full and equal third part of all the lands, tenements, and real estate of which her husband was seized, as an estate of inheritance, at any time during coverture; and she shall, in like manner, be endowed of one third part of all the right, title, or interest that her husband, at the time of his decease, had in any lands and tenements held by bond, article, lease, or other evidence of claim, and she shall remain in the mansion house of her husband, free of charge, for one year after his death, if her dower be not sooner assigned her.”
Section 2 of the act of 1805, in relation to jointure estates, is expressed by section 2 of this act; as is section 5 of that act, in relation to conveyances, intended to he in lieu of dower, by section 4 of the act of 1824. And from the fact of dower being given.by section 1, in equitable estates and interests, the right to proceed in equity to assert such equitable right, necessarily followed. It is therefore provided by section 9, “ That the widow applying for dower in the lands of her deceased husband, may file her petition in chancery against the heir or other person having the next immediate estate of inheritance, setting forth her right thereto, and describing the tracts of land, of which she claims to be endowed, arid the court, .on the hearing of such cause, shall render such decree in the premises, as to them shall appear just, and consistent with the rights of all the parties interested therein:”
This section of the law of 1824 was the first law authorizing proceedings in this state, by petition in chancery, by the widow, to obtain her dower. This provision gives her the additional, if not the exclusive right of petition in chancery to obtain her right of dower. And it matters not whether the provision was intended to afford her an appropriate remedy, by petition in equity, to obtain her dower in equitable estates allowed by section 1 of the act, as cumulative to her common law right of writ of dower, or, whether it was designed as an exclusive mode of procedure, and so intended to supersede the common law action of writ of dower. The latter has been the construction which this section of the- *416 ■statute seems to have pretty generally, if not universally, received. And it is believed that few, if any, writs, of dower have been issued under this act of 1824.
Now, although by force of the same rules of law which ■obtain in England, an antenuptial agreement not within the statute can not, in this state, constitute a bar, in a proceeding at law by writ of dower, yet it is obvious that, in equity, the petition can only be allowed upon the law and equity of the case being made to appear in favor of the petitioner.
A defense, therefore, which successfully denies and disproves all equity in favor of the petitioner, and shows that an allowance of the petition would be contrary to equity, necessarily constitutes a good defense, when the proceeding is in a court of equity.
The right to dower, claimed in the petition, arises, like an estate by inheritance in lands, or by distribution in the goods, chattels, or other personal estate of an intestate, under and by force of the statute law of the state. The dower estate, therefore, of the petitioner, at the time of making said ante-nuptial agreement, was a contingent and uncertain estate. It was only a possibility; hence the necessity of our statute to constitute the jointure estate a bar to the dower.
In the case of Needles v. Needles, 7 Ohio St. Rep. 432, this court held it to be a settled rule, that what is termed either a naked possibility, or a remote possibility, can not be released for the reason that a release must be founded on a right in being either vested or contingent. And, under this rule, it has generally been held, while a present existing right may be released, although such right is not to take effect until in future; yet a mere possibility, or a remote possibility, which the law terms a possibility upon a possibility, can not be released, it not being regarded a right in being which can be the subject of release; for it is only such a right, as the hope which an heir apparent has of succeeding to the estate of his ancestor. And, under the application of this doctrine to that case, the court held a receipt in writing, and an agreement duly signed and sealed by the heir, executed and delivered to him in the lifetime of the intestate, acknowledging the *417 receipt of $2000 00, in full of all claims against the estate of the person so paying the same, after his death, as one of the heirs, and thereby binding himself and his heirs to set up no further claim, did not preclude such heir from asserting his claim as such heir to his distributive share of such estate. The right so assumed to be released, was held to be a mere possibility, and not the subject matter of a release, at the time of executing said receipt. It was also suggested, in the opinion pronounced in the case, as an -insuperable objection to the giving effect to such a contract, that “ the laws of the state have provided the mode for the distribution of a man’s property after his decease.”
In that case, by the statute law of the state, the heir was entitled to a certain part of the estate. In this case, by the statute law of the state, the widow is entitled to a certain part of the estate. In each case the contract was made with the intestate; and what is said of want of mutuality of contract in the case of Needles v. Needles, might, with equal propriety, be said in this case.
It might, therefore, well be doubted whether the bare contract itself, although fair and reasonable in its terms, and Iona fide, entered into by the parties, could, unless within the statutory provision, constitute a defense to a claim for dower at common law, or by writ of dower on the part of a widow. Indeed, it might be doubted whether the contract so made and entered into by the parties prior to the marriage, although valid as an antenuptial contract, would, in law or equity, constitute a bar to the plaintiff’s right to dower in the lands. Section 4 seems to embrace precisely such a case, in the provision, “ That when any conveyance, intended to be in lieu of dower, shall, through any defect, fail to be a legal bar thereto, and the widow, availing herself of such defect, shall demand her dower, the estate and interest so conveyed to said widow shall thereupon cease and determine.”
But, whatever may be said of the feasibility of the case of Stilley v. Folger, 14 Ohio Rep. 610, being resolved under section 4 of this statute, the present case is clearly not within that section. For it can not be claimed that the facts in this *418 case show, as they seem to in that, from the report of the case, merely the case of an unexecuted contract intended to be in lieu of dower,through a defect of its provisions failing to be a legal bar to the widow’s dower, set up as a defense in chancery, to her demand of dower. The statute, it is true, would seem to rather contemplate that the decree of the court should be that the provision or interest so made by the contract should “ cease and determine,” than that her right of dower should cease and determine. In that case, the widow refused to take under the contract. In this case, the widow has demanded, and actually received and enjoyed, the full benefits of the antenuptial agreement, and which she consented and agreed to accept as the consideration and price of her release of dower.
This agreement, then, under the circumstances mentioned, was certainly a reasonable agreement in its terms. The answer avers that said antenuptial agreement was fully performed by both parties during their joint lives, and that after the death of said Asa Murphy, the petitioner claimed the benefit of the contract, and under its provisions asserted her right to all the personal property belonging to her at the time of her marriage and reduced to possession by said Asa Murphy, and also the products of her farm, being more in value than the entire amount of her personal property, at the time of her intermarriage with said Asa; and that the defendant, then being the administrator and heir of said intestate, allowed her said claim, under said antenuptial agreement, and surrendered and delivered to her all of her said property, so claimed under said contract.
And the petitioner now admits, by the demurrer, the truth of all of said averments. It is difficult, therefore, to perceive any possible equity upon which the petition for dower can possibly rest. The record shows that the consideration for her release of dower, has actually been claimed and received by her from the heir and administrator since the coverture; and this fact affords as strong an objection, in equity, to the allowance of her petition for dower, as would the receipt and •enjoyment of a jointure by her in “lieu of dower” This *419 antenuptial agreement thus executed in favor of the petitioner, upon her claim of the provisions in her favor, may be well set up by the defendant, the heir and administrator, so allowing her claim under the contract, as an equitable estoppel in this case.
The district court very properly regarded the facts set up in the answer as a sufficient defense, and rightfully overruled the demurrer thereto. The judgment of the district court must, therefore, be affirmed.
Scott, C.J., and Peck, G-holson and Brinkerhoee, J J., concurred.